AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

TWO CELLULAR PHONES, CURRENTLY LOCATED AT 335 WEST THIRD STREET DATYON, OHIO

Case No. 3;22-mj-344

FILED
RICHARD W. NAGEL
CLERK OF COURT
10/17/22

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

## APPLICATION FOR A SEARCH WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
SEE ATTACHMENT A   This court has authority to issue this warrant under 18 U.S.C. sections 2703(c)(1)(A) and 2711 (3)(A) and Federal Rule of Criminal Procedure 41.

located in the   Southern   District of   Ohio   , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) | Possession with intent to distribute cocaine, a Schedule II controlled substance |

The application is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

TFO Dustin J. Phillips
*Printed name and title*

Sworn to before me and signed in my presence via telephone.

Date: 10/17/2022

City and state: Dayton, Ohio

Caroline H. Gentry
United States Magistrate Judge

DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF TWO CELLULAR PHONES, CURRENTLY LOCATED AT 335 WEST THIRD STREET, DAYTON, OHIO | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, **DUSTIN J. PHILLIPS**, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I have been employed as a law enforcement officer for the past fifteen (15) years. I currently serve as a detective with the Dayton Police Department (DPD). I am presently a Task Force Officer (TFO) with the Federal Bureau of Investigation's Dayton Resident Office's Criminal Investigative Division (CID). As such, I have been sworn under Title 21, United Stated Code (U.S.C.), Section 878, to serve as an officer of the United States duly empowered to conduct federal criminal investigations and execute arrests for criminal violations of Titles 18 and 21 of the U.S.C.

3. I am also a TFO with the DPD's Major Case/Drug Enforcement Unit within the Criminal Investigations Bureau. Since 2013, in my roles with CID and DPD, I have almost

exclusively concentrated on the investigation of: narcotics-, firearms-, and gang-related criminal cases. During my law enforcement career, I have been involved in a large number of firearm-related arrests, executions of search warrants resulting in the seizure of large quantities of narcotics and firearms, participated in undercover narcotics purchases, and supervised the activities of police informants who have provided law enforcement authorities valuable and accurate information and assistance that ultimately resulted in undercover narcotics purchases and apprehensions. During the course of my law enforcement career, I have received an extensive amount of formal and informal training in the investigation of drug trafficking and narcotics-related crimes. I have previously obtained search warrants to examine cellular phones for evidence of drug trafficking and other crimes, and am familiar with techniques used to search cellular phones for electronic evidence as well as the role of cellular phones in drug trafficking.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched are one (1) Samsung cellular phone and one (1) Nokia cellular phone. Hereinafter referred to as the "**DEVICES**". The **DEVICES** are further described and depicted in Attachment A. The **DEVICES** are currently located at the Dayton Police Department, 335 West Third Street, Dayton, Ohio.

6. The applied-for warrant would authorize the forensic examination of the **DEVICES** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7. On September 28, 2022, Dayton Municipal Court Judge Christopher D. Roberts issued a search warrant for premises located at 207 Knecht Drive, Dayton, Ohio believed to be occupied by **TYRONE JASON HARRIS** (hereinafter referred to as "**HARRIS**"). Shortly after the search warrant was signed, members of the Dayton Police Department Special Investigations Bureau began conducting surveillance on the residence.

8. At approximately 10:25 am, detectives observed **HARRIS** exit the front door of the residence and begin walking away from the house. Multiple detectives attempted to make contact with **HARRIS** as he walked into an alley, approximately one block away from the house. As detectives exited their unmarked vehicles, they were all wearing ballistic vests, clearly identifying them as Police Officers. **HARRIS** saw the detectives exiting their vehicles and immediately began to flee on foot. He ran through a back yard where Detective G. Tyler Orndorff saw him discard a small baggie of what appeared to be narcotics over a privacy fence. **HARRIS** was apprehended a short time later and was taken into custody. **HARRIS** was found to be in possession of the Samsung **DEVICE**.

9. Once **HARRIS** was secured, Sergeant Jason E. Rhodes and I returned to the back yard where the baggie was thrown. We located and recovered a baggie of what appeared to be crack cocaine, which was later weighed at approximately 8.6 grams. I then returned to **HARRIS** and spoke with him. I first advised him of his Miranda warnings, to which he responded he understood. **HARRIS** then stated he did not wish to answer questions without a lawyer present. **HARRIS** was not questioned about his arrest, however I did still ask him about the house, which was done as an officer safety measure. While asking about the house, I learned that there were no

3

other people or dogs inside and the keys that **HARRIS** was in possession of, unlocked the front door.

10. A short time later, additional members of the Special Investigations Bureau arrived on scene and made entry into the house whereby we determined no other people were inside. Once the house was secured, we completed a thorough search of the premises. This search resulted in the recovery of two loaded firearms (Apintl .38 revolver with serial number RIA1715789 which was loaded with 6 rounds of ammunition, and an Imperial Metal .22 revolver with serial number 107109 which was loaded with 6 rounds of ammunition), two amounts of suspected crack cocaine which weighed approximately 6.1 grams and 2.2 grams, one baggie of suspected heroin which weighed approximately 2.3 grams, and one baggie of an unknown substance which weighed approximately 6.3 grams, and several items of possessory interest connecting **HARRIS** to this residence, ammunition for several other firearms, and the Nokia **DEVICE**.

11. Detectives located a variety of items considered to be *drug paraphernalia* as this term is defined under 21 U.S.C. § 863(d), to wit: a digital scale with suspected cocaine residue, Pyrex measuring cups with suspected cocaine residue, a plate with suspected cocaine residue, a small hand operated press, a handheld strainer, and a box of clear sandwich baggies. All of these items were located in close proximity in the kitchen/dining room area. As such, it appears each of these items were being used for illegal drug manufacturing.

12. Each of these said items were collected by officers for inclusion as evidence. These items were later tagged and secured in the DPD Property Room. All the suspected drugs were submitted to the Hamilton County Crime Laboratory for forensic testing.

13. The subject house was found to be fully furnished. The second floor of the residence was comprised of three bedrooms and one bathroom. Of these three bedrooms, one

appeared to be utilized by an adolescent male, one appeared to be utilized by an adolescent female, and the third bedroom acted as an office/storage area. The living room was located on the first floor and was fully furnished. On the fireplace mantle in the living room, detectives located two diplomas issued to **HARRIS** as well as a club photo of **HARRIS** and an unknown female. Between the living room and kitchen was an area that appeared to be formerly used as a dining room. This room was now being used as a bedroom. There was a bed, television, and several personal effects. In the middle of the room was a small dresser. On top of this dresser were several items of men's clothing which appeared to be sized appropriately for **HARRIS.** There were also several pairs of men's shoes which appeared to be sized appropriately to fit **HARRIS** on the floor. On top of the dresser with the clothing, detectives located the digital scale with what appeared to be cocaine residue. Next to this was a folding chair. On top of the chair was a box fan which was blowing over a paper towel, the handheld strainer, and the 6.1-gram piece of suspected crack cocaine. Detectives opened several shoe boxes in this same room, discovering the additional baggies of suspected drugs, as well as multiple items of possessory interest. The Apintl .38 revolver was located between the mattress and the box spring of the bed in this room. The Imperial Metal .22 revolver was located inside one of the shoeboxes in this room. Under the bed in this room was a small personal safe. Detective Rose utilized a key from the keyring recovered from **HARRIS'** person, to unlock this safe and look inside. Inside this safe was a box of .22 ammunition. The Nokia **DEVICE** was located in this room on a small table at the foot of the bed. The basement was primarily used for storage and did not have any living quarters set up.

14. From my training and experience, I know that at the retail level, traffickers often use cellular telephones to arrange transactions with their user-customers, often directing the customer to locations where the trafficker can meet them in a car (sometimes rental cars) and do a

5

quick hand-to-hand exchange. In addition to using texts to arrange a single sale, it is common for traffickers to send text messages to the users informing them of price or the availability of a new supply of drugs (sometimes in a mass text to several people simultaneously). Traffickers commonly store the names and phone number of their user-customers, as well as those involved in the drug trafficking with the trafficker (sometimes under alias or code names). Because cellular phones often have digital cameras built-in to the phone, it is common for traffickers to take pictures of themselves, their associates, proceeds, and other evidence of drug trafficking. Cellular phones can also store photographs sent to the phone electronically. It is common for traffickers to possess multiple phones because they may be transitioning from sales on a particular phone to another phone as a law enforcement countermeasure, and because traffickers may use one phone to talk to customers while using other phones to communicate with a supplier or associate. I am aware that illegal drugs, namely cocaine is often sold in 1 gram increments. Given the several quantities of suspected crack cocaine located both on **HARRIS'** person, as well as inside the residence, the recovery of a variety of items considered to be *drug paraphernalia,* and the recovery of the **DEVICES**, it appears as though **HARRIS** was actively engaging in trug trafficking at the time of the arrest on September 28, 2022.

15. Based on the above facts, I assert there is probable cause to believe that evidence of violations of 21 U.S.C. §§ 841(a)(1) "Possession with intent to distribute cocaine, a Schedule II controlled substance", may be found on the **DEVICES**. I request the search warrant to search the **DEVICES** listed in Attachment A for evidence of those violations as set forth in Attachment B.

16. The **DEVICES** are currently stored at the Dayton Police Department, 335 West Third Street, Dayton, Ohio (within the Southern District of Ohio) having lawfully come into DPD's custody after the execution of the arrest warrant. In my training and experience, I know

that the **DEVICES** have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **DEVICES** first came into the possession of the Dayton Police Department.

## TECHNICAL TERMS

17. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed

7

and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

18. Based on my training, experience, and observation of the **DEVICES**, I know that the **DEVICES** have the capability to serve as a cellular telephone and to store electronic data in various forms. In my training and experience, examining data stored on devices of these types can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on a device. This information can sometimes be recovered with forensics tools.

20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence

8

of the crimes described on the warrant, but also forensic evidence that establishes how the **DEVICES** were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **DEVICES** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **DEVICES** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **DEVICES** to human inspection in order to determine whether it is evidence described by the warrant.

22. *Manner of execution.* Because this warrant seeks only permission to examine the **DEVICES** already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **DEVICES** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

DUSTIN J. PHILLIPS
TASK FORCE OFFICER
FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn to before me on October 17, 2022:

Caroline H. Gentry
United States Magistrate Judge

## ATTACHMENT A

The item to be searched one (1) Samsung cellular phone and one (1) Nokia cellular phone (hereinafter the "**DEVICES**") presently located at the Dayton Police Department, 335 West Third Street, Dayton, Ohio. The **DEVICES** are depicted and described below:

a. Samsung cellular phone; and

 

b. Nokia cellular phone.



This warrant authorizes the forensic examination of the **DEVICES** for the purpose of identifying the electronically stored information described in Attachment B.

2

## ATTACHMENT B

1. All records on the **DEVICES** described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1) "Possession with intent to distribute controlled substances" and involving **Tyrone Harris**, including:

   a. lists of drug customers and related identifying information;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs or others involved in the possession or distribution of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. any information regarding the acquisition, use, or possession of firearms;

   e. any information related to the acquisition of rental cars or cellular phones.

2. Evidence of user attribution showing who used or owned the **DEVICES** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and

instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.